CARMELA FURFERI, SUBSTITUTED IN THE PLACE AND STEAD OF DOMINICK FURFERI, PETITIONER-RESPONDENT, v. PENNSYLVANIA RAILROAD COMPANY, DEFENDANT-PROSECUTOR.

Submitted October 15, 1935—Decided December 11, 1935.

Before Justices CASE and BODINE.

For the petitioner-respondent, *Felcone & Felcone* (*Michael Felcone*).

For the defendant-prosecutor, *W. Holt Apgar.*

The opinion of the court was delivered by

CASE, J. We review a judgment of the Mercer Common Pleas affirming a determination of the workmen's compensation bureau which found for the present respondent in a proceeding to recover, under the Workmen's Compensation act, for the death of her husband.

Respondent's decedent, Dominick Furferi, in prosecutor's employ, was engaged in removing railroad ties from a car at the barracks yard of the railroad company in Trenton to a convenient storage space adjacent thereto. As Furferi, with three of his fellow workmen, and the use of a double set of tongs, was lifting a railroad tie, he experienced a sharp abdominal pain. He reported to his foreman that he was "sick in the stomach." Later in the day he ceased work and went to a physician. The trouble was not immediately diagnosed. Three days later he was operated upon, and it was found that an old rupture had become incarcerated and strangulated, that the intestine had become gangrenous for twelve inches on each side of the strangulation, was perforated and had permitted fecal matter to ooze into the abdominal cavity, producing peritonitis and, on the day of the operation, death. The cause of death was strangulated hernia and peritonitis due to the free bowel movement into the abdominal cavity.

The questions are: First, may compensation be granted as on an aggravation of an existing hernia without complying with paragraph 11 (x) of the Workmen's Compensation act? 2 *Cum. Supp. Comp. Stat.*, ch. 93, p. 3872; *Pamph. L.* 1919, p. 201. Second, was the decedent on August 15th, 1933, engaged in interstate transportation?

The claim as filed charged that the injury was an original strangulated inguinal hernia. That ground for compensation was abandoned. Indeed the court below found that the facts of the case did not sustain a recovery under the hernia section (chapter 93, *Pamph. L.* 1919, p. 204, amended chapter 49, *Pamph. L.* 1923; 2 *Cum. Supp. Comp. Stat.*, p. 3874) of the statute. Petitioner, however, orally amended her claim in the course of the hearing to ground in the allega-

tion that the decedent "suffered an aggravation of an existing hernia, which became incarcerated and subsequently strangulated." Compensation was allowed under the provisions of the statute relative to general accidents, and upon the ground that the accident had resulted in the protruding and consequent strangulation and infection of the bowel because of an existing hernia.

The only New Jersey cases relied upon to sustain that theory of recovery are *New York Switch and Crossing Co.* v. *Mullenbach,* 92 *N. J. L.* 254, and *Graves* v. *Burns, Lane and Richardson,* 10 *N. J. Mis. R.* 667. It is worth while to regard closely the sequence in time and thought of the *Mullenbach* case and the hernia statute. The decision was rendered May 3d, 1918, and found the employer liable for compensation where the workman had strained the muscles of his back aggravating two hernias, resulting in an operation, post-operative pneumonia and death. At that time the statute was silent on the subject of hernia; but at the next legislative session was passed chapter 93 of the *Pamph. L.* 1919, *supra,* which added to section 11 of the act the following clause:·

"(x) Hernia is a disease which ordinarily develops gradually, being very rarely the result of an accident. Where there is real traumatic hernia resulting from the application of force directly to the abdominal wall, either puncturing or tearing the wall, compensation will be allowed. All other cases will be considered as either congenital or of slow development and not compensable, being a disease rather than an accidental injury; unless conclusive proof is offered that the hernia was immediately caused by such sudden effort or severe strain that, first, the descent of the hernia immediately followed the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employe was compelled to cease work immediately; fourth, that the above facts were of such severity that the same was noticed by the claimant and communicated to the employer within twenty-four hours after the occurrence of the hernia; fifth, that there was such physical distress that the attendance of a licensed physician was required within twenty-four hours after the occurrence of the hernia. * * *"

It is a fair deduction that the statute was inspired by the decision. Our books disclose only two citations of the *Mullenbach* decision, namely, *Lundy* v. *Brown & Co.*, 93 *N. J. L.* 469, and *Levitan Embroidery Works* v. *Lamatina*, 95 *Id.* 68, both of which bear upon the effect to be given, on appeal, to the trial court's finding of fact and not at all upon the merits.

There is no proof in the instant case suggestive of the application of force directly to the abdominal wall. Therefore, there was no real traumatic hernia. All other cases of hernia are non-compensable unless upon conditions that have not been observed. It does appear, however, that the decedent had for years suffered from a hernia and that it had been worse during the six months preceding the alleged injury. So, if respondent's argument be sound, the facts of the case produce this anomaly: If the workman had, in the stress of his work, impaired a theretofore perfect abdomen by bringing on a hernia, there could have been no recovery; but since, years before in some way not attributable to his employment, he had suffered a hernia which for months had been becoming worse, and now, while at work, he undergoes a recrudescence of that trouble, there may be a recovery. This reasoning appears to be illogical and not in accord with the legislative intent as expressed in paragraph 11 (x). The statute, under such a construction, is largely meaningless, because a hernia, non-compensable at its occurrence, becomes compensable on its reoccurrence. The language of the statute is plain, is accentuated by its chronological sequence to a contrary court finding and has been observed by the uniform absence of suits of this character during the intervening years. If there is to be a change, it should be by legislative expression.

The Graves case is not in point. The accident therein produced a tuberculosis from bacteria lying dormant in the system. It was held in *Lundy* v. *Brown & Co.*, *supra*, that liability attends where death results from tuberculosis superinduced by the condition resulting from the traumatism suffered. It may be assumed, for the purposes of the argument, that that would be true, not only of tuberculosis, but of any other physical impairment, in the absence of a statutory

enactment that the impairment, whether trauma or disease, is not compensable except upon conditions which have not been met.

We consider that the decisions of other jurisdictions cited by the respondent are, either because of distinction in the facts or the statutory law, not comparable. *Tragle* v. *Hollis Chocolate Co. (Pa.)*, 169 *Atl. Rep.* 472, makes the nearest approach; but marked differences exist even there, as for instance the significant timing, in our state, of the *Mullenbach* decision and the hernia statute.

The first question is answered in the negative.

We are not free to consider whether the unloading of the ties was the completion of a movement in interstate transportation which began with the loading in Pennsylvania, because, according to the opinion in the pleas, this point was waived before that court.

It is further insisted that the ties were being removed from the car for the immediate purpose of repairing a track used for interstate transportation. The fundamental facts in the case are against this contention. The finding below was that the ties were being placed in storage, to be taken therefrom in small quantities from time to time for various uses, only one of which was the repair of the roadbed for interstate transportation; and the proofs sustain that finding. Therefore, the ties seem to have the same legal aspect as had the coal supply in *Chicago and Eastern Illinois Railroad Co.* v. *Industrial Commission of Illinois*, 284 *U. S.* 296; 76 *L. Ed.* 304, and in *Chicago, Burlington and Quincy Railroad Co.* v. *Margaret Harrington*, 241 *U. S.* 177; 60 *L. Ed.* 941. The test is: Was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it? *Shanks* v. *Delaware, Lackawanna and Western Railroad Co.*, 239 *U. S.* 556; 60 *L. Ed.* 436; *Rossi* v. *Pennsylvania Railroad Co.*, 115 *N. J. L.* 1. The factual answer is that he was not.

The judgment below will be reversed, and the record remitted for disposition consistent with our findings.